# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT BOWLING GREEN
# CIVIL ACTION NO. 1:13CV-P162-M

**KEENAN ELLIOTT**                                                                                       **PLAINTIFF**

**v.**

**MISSY CAUSEY** *et al.*                                                               **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Keenan Elliott filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will allow Plaintiff's retaliation claim to proceed against Defendant Missy Causey in her individual capacity and will dismiss all other claims.

## I.

Plaintiff is an inmate at the Luther Luckett Correctional Complex. The complaint concerns his previous incarceration at the Warren County Regional Jail (WCRJ). He sues the following eighteen Defendants, each of whom is employed by WCRJ, in their individual and official capacities: Missy Causey, whom he identifies as a major; Gary Hood, Angie Pillow, John Sanders, Dustin Lee, Pat Johnson, and Earl, each identified as corrections officers; Jackie Strode, the WCRJ Jailer; Lt. Douglas Miles[1]; Lt. Shawn Wittlsey; Major Jeff Robinson, the Class D Coordinator; Nurses Jamie, Taffy Stafford, Kim Keith, and Barbara; Sgt. Sandra; Lt. David Spillman; and Lt. Kim James.

---

[1] In the portion of the complaint where Plaintiff is to list Defendants, he lists "Miles Douglas LT" and "D. Miles LT." In the body of the complaint, he refers to "LT. Douglas Miles." For the purposes of initial review, the Court presumes that these are the same Defendant and will refer to this Defendant hereafter as Defendant Miles.

Plaintiff states, "I come to show Im being deliberate indifference against (not racial)." He reports that his medically-required shoes worth $185 were torn up in a shakedown of his cell and that he brought a separate civil action regarding the loss of his shoes.[2] He states that Defendant Sanders "wouldnt never give me free stuff supplies with out my arm band on but he and Lt. Shawn Wittlsey would. . . ." Plaintiff reports that he was getting legal work notarized by Defendant Sanders after filing a grievance against him about the arm band and that Sanders "spilled coffee on my legal work . . ." and "told me to rewrite it." Plaintiff goes on to state, "I said I'll just file a grievance. He said so if I was you Id be quiet before I put you in the hole."

Plaintiff also represents that he asked Defendant Causey for a copy of his license stored in the property room but that Causey would not give him the copy because he had no money in his inmate account. According to the complaint, when he had money put in his account, Defendant Causey still would not copy the license. Defendant Causey asked Plaintiff why he needed the copy, and he "told her for a legal issue in TNN as well as renewing our car ins. She said . . . I dont have staff to run for you. She said get some one from the streets to come get your licens and I said I need them on my property. She said have them bring them back. I witnessed another inmate get copies after this . . . ."

Plaintiff states that Defendant Lee gave other inmates "free stuff." He reports that Defendant Causey asked him "why Im I concerned about what another inmate gets I told her when I dont have my Id I dont get nonthing."

Plaintiff further contends that on May 28, 2013, he was "put in the Medical Dept for refusing to take meds from Nurse Barbara. I took them anyway because I had already signed a refusal the day before because I didnt know what it was." He states that Defendant Nurse

---

[2]The Court does not consider Plaintiff's claims regarding the loss of his shoes as part of this action.

2

Barbara did not know what the medicine was but told him that if he did not take it he would go to the hole. He states, "So I took it the next time next day I didnt she told me if you dont sign the refusal paper CO Mike will later on Mike said he didn't sign. Then . . . head nurse said CO. Mike did, anyways I was put in medical at this point with Aids and TB there on count time." He represents that Defendant "CO Gary Hood came in I asked to be taken out. He took me out. He said I dont have a valid reason to take you out." Defendant Hood told Plaintiff that "if you cuss me I can put your in the single cell I was playing laughing with him said go to hell we both laughed." Then Defendant Causey "said you refused housing so your going to the hole. I told her Gary Hood didnt tell you what he told me to do (cuss him) She said no. She said Ill take care of him. She still put me in the hole." Plaintiff states that "then the next day put me back in medical my meds ran out so I was put in there for not taking meds but then only given 2 pills for 4 days. This anger from [Causey] comes from my shoe incident as well as when the Dept. Of Corrections Lady visited on 5-29-13." Plaintiff reports that when a woman from the Kentucky Department of Corrections (KDOC) visited WCRJ, "she said yall have any problems. I said I have some but I know Missy is gonna put me in the hole. Missy said no Im not, 2 days later in the hole. at Booking when I was put in the hole she said Im not doing it because of the DOC lady. She said after I told her that HIV TV. And old men of 75 plus 6 of us there." He also told her that, "Im having to clean up behind them plus their wining and crying at night, Missy said like you don't wine and cry. Lock him up Hood."

Plaintiff next states that on August 17, 2013, there was a search of his cell. According to the complaint, when he returned to his cell, he noticed that his legal paper work had been taken. He filed a grievance. He states that Defendant Pillow was the one who searched his area. He stated that the legal work was "hand written concerning my fed legal case." In response to the

3

grievance, Defendant Causey "said if you have hand written mail thats legal you think its not . . . Missy said it has to be from your attorney."

Plaintiff further states that other inmates refused medications and did not get put in the hole but he was put in the hole for refusing medications.

Plaintiff reports that Defendant Miles has "been mad because I asked him if my shoes that staff tore up was in property. He said Yes! Elliott, then Missy got on to him. (By staff)." He states that he asked Defendant Miles to put some "legal work from Ky Re-Entry in the Majors box which [non-Defendant] Major Baker is over the program he Miles told me why do you always give me stuff to do out loud in front of the whole cell." Plaintiff goes on to state, "I wrote Baker a letter telling him how Miles handled the situation I didnt file a grievance I thought Baker could handle it and make him not retaliate against me." He also states that after he filed a grievance against Defendant Pillow that Pillow "said out loud at H Womens Pod in front of the CO York . . . Don't listen to sh** he says he will lie on you."

Plaintiff maintains that Defendants Hood and Causey "still have tension because in 2009 2010 I filed a request for a federal coordinator Gary Dill to come to WCRJ. I witnessed very harsh treatment being done to inmate Snow." He states that "Snow was sleeping and upon waiking up to Gary Hoods loud behavior hollering and activating his taser and grabing Hood then Missy Causey came and started hollering escorting Snow out of the dorm where we couldn't see the incident." Plaintiff states that he wrote to federal court and "Gary came and investigated." Plaintiff adds that he has "a lot more to support how one rules apply to me but not others. I do feel this is deliberate indifference not racial."

Plaintiff next states that when he was transferred from WCRJ to Roederer Correctional Complex Defendant Miles "singled me out again telling me more on this wall like others. I

wasnt the only one on another wall. He said it once, before he got in the gym I was already going tru my property for throw away stuff I know the routine Ive done it 2 times. So with some of my papers on the floor he said 3 times back to back move Keenan I said OK he continued saying this with not wanting to give me time to move."

In another incident, Plaintiff reports that he was transported to WCRJ on October 1, 2012, and he knew he would be "greeted by Staff very unprofessional." He states that Defendant Lee "asked out loud Do you want protective custody. He and others was laughing. He [Lee] said I knew you would be back. Dep. Brown was very surprised."

Plaintiff states that on another occasion Defendant Kim James notarized a paper for him. He states that he told her, "I guess you've hear how Missy and staff has been treating me. She said I've heard. I then told her its unfair and a lot of harassment, Kim said I lived and worked Indiana and until I came here I hadn't seen as much racism in my life."

Finally, Plaintiff states, "All these people here at one point thrown me in the hole for no apparent reason they together have also seen that each other was wrong when I showed them their wrong." He states, "For instant I was thrown in the hole because of a diabetic sack I never asked for and the next morning I was let out because nurse was wrong."

As relief, Plaintiff seeks compensatory and punitive damages, payment of his jail bills, and transfer to another institution.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is

5

immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III.

**A.     Official-capacity claims**

Plaintiff sues all Defendants in their official capacities. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official-capacity claims against Defendants are, therefore, actually claims against their employer, Warren County. *See Lambert*

*v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality can only be held responsible for a constitutional deprivation if there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). The plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Plaintiff has not alleged that any Defendant acted pursuant to a municipal policy or custom with respect to any of his claims. Plaintiff's complaint appears to allege isolated occurrences affecting only him. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). Accordingly, Plaintiff's official-capacity claims against all Defendants will be dismissed for failure to state a claim upon which relief may be granted.

## B. Individual-capacity claims

### 1. Placement in the hole and in the Medical Department

Plaintiff alleges that he was placed in the hole and in the "Medical Department" for refusing medications and on other occasions. While Plaintiff identifies no constitutional provision which he claims was violated, he does allege "deliberate indifference." As such, the Court will construe the allegations as seeking to allege a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause. "A viable Eighth Amendment claim must satisfy both an objective component and a subjective component." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The objective component requires that the deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). An inmate must show that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (citations omitted). The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson*, 501 U.S. at 302-03.

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). "[H]arsh 'conditions of confinement' may constitute cruel and unusual punishment unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Rhodes*, 452 U.S. at 347). The alleged conduct must reflect an "unnecessary and wanton infliction of pain" to fall within the ambit of conduct proscribed by the Eighth Amendment.

8

*Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

"'Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)); *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) ("Merchant presented no evidence that he was denied basic human needs or was otherwise subjected to cruel and unusual punishment by virtue of the conditions in administrative detention or disciplinary segregation."). Plaintiff does not allege that he was denied basic human needs while he was placed in the hole or in the Medical Department. Therefore, Plaintiff's allegations fail to state an Eighth Amendment claim.

Nor can Plaintiff allege a violation of the Due Process Clause for being placed in the hole or in the Medical Department. The law is clear that inmates have no constitutional right to be incarcerated in any particular institution, a particular part of an institution, or a particular security classification, unless the state has created a liberty interest in remaining at a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-229 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). This is not the case in Kentucky where transfer of prisoners is within the discretion of the corrections department. Ky. Rev. Stat. § 197.065.

Therefore, Plaintiff's claims that he was placed in the hole and in the Medical Department will be dismissed for failure to state a claim upon which relief may be granted.

### 2. Conditions of medical department

Plaintiff complains that in the Medical Department there were inmates with AIDS and

TB, that he had to clean up after older inmates, and that other inmates were "wining and crying at night." The law has long been that "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-08 (1986). In addition to the legal requirement of an "injury" in case law historically, Congress acted to further limit prisoner suits to only a specific kind of injury. Under the Prison Litigation Reform Act (PLRA), lawsuits brought by institutionalized persons require a "physical" injury in order to permit recovery: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury need not be significant, but it must be more than de minimis for an Eighth Amendment claim to proceed. *See Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). Plaintiff has alleged no injury resulting from being housed in the Medical Department. *See Stern v. Hinds Cnty.*, 436 F. App'x 381, 382 (5th Cir. 2011) (finding that allegations regarding exposure to diseases, including tuberculosis, failed to state a claim for compensatory damages in light of 42 U.S.C. § 1997e(e)). Therefore, this claim will be dismissed for failure to state a claim upon which relief may be granted.

> 3. **Denial of free supplies without arm band**

Plaintiff alleges that Defendants Sanders, Wittlsey,[3] and Lee denied him free supplies and "free stuff" if he was not wearing an armband but allowed other inmates to receive supplies without an armband. The Court presumes that Plaintiff is referring to access to his indigent

---

[3] It is not clear from the complaint whether Plaintiff is alleging this claim against Defendant Wittlsey. However, since the only reference to Wittlsey in the body of the complaint is in the context of this claim, the Court will construe the allegations as bringing this claim against him.

supplies. While Plaintiff does not cite any grounds to support this claim, the Court construes the allegations as seeking to allege a violation of the Due Process Clause of the Fourteenth Amendment. To establish a due process claim, plaintiff must show that he has been deprived of a right or interest. *See, e.g.*, *Bailey v. Carter*, 15 F. App'x 245, 251 (6th Cir. 2001); *Sturkey v. Ozmint*, No. 8:07-1502-MBS, 2009 U.S. Dist. LEXIS 18786, at *2 (D.S.C. Mar. 11, 2009). However, Plaintiff does not allege that he was actually deprived of the supplies, only that he was required to show an arm band. Therefore, because he does not allege that he was deprived of any right, the allegations fail to state a claim. The fact that other inmates were not required to show their arm bands does not change the analysis. Accordingly, Plaintiff's individual-capacity claims against Sanders, Wittlsey, and Lee concerning the denial of free supplies without an arm band will dismissed for failure to state a claim upon which relief may be granted.

    4.  **Verbal harassment**

  Plaintiff alleges instances where Defendants Sanders, Miles, Pillow, Lee, Causey, and James made disparaging comments to him or about him or verbal threats to put him in the hole. The Eighth Amendment proscribes punishments which involve the unnecessary and wanton infliction of pain. *Whitley*, 475 U.S. at 319. However, harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey*, 832 F.2d at 954-55; *see also Searcy v. Gardner*, No. 3:07-0361, 2008 U.S. Dist. LEXIS 118217, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Therefore, the claims alleging verbal

abuse and harassment against these Defendants fail to state a claim upon which relief may be granted and will be dismissed.

## 5. Access to courts

Plaintiff alleges that Defendant Sanders spilled coffee on his legal work and told him to rewrite it, that Defendant Causey would not copy his license for a legal issue in Tennessee, and Defendant Pillow removed legal work from his cell during a cell search. The Court construes these claims as alleging denial of his access to courts. In order to state a claim for denial of access to the courts, however, a plaintiff must show actual injury. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "'Meaningful access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* (internal citations omitted). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). Here, Plaintiff has not alleged that these difficulties actually prevented him from meaningfully accessing the courts. As such, he has not set forth a constitutional claim against these Defendants for denial of access to the courts, and the individual-capacity claim against these Defendants will be dismissed for failure to state a claim.

## 6. Grievance handling

Plaintiff also complains about the way Defendant Causey handled his grievance

concerning the search of his cell by Defendant Pillow. However, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same). Thus, where the allegation against a defendant relates only to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged constitutional violation. *Id.* Accordingly, Plaintiff's § 1983 individual-capacity claim against Defendant Causey based on her denial of Plaintiff's grievance will be dismissed for failure to state a claim upon which relief may be granted.

      7.    **Treatment of inmate Snow**

Plaintiff makes allegations against Defendants Hood and Causey concerning another inmate, Snow, in 2009 and 2010. Assuming that any claims Plaintiff may be attempting to bring

13

on behalf of Snow were not barred by the statute of limitations, Plaintiff cannot bring a claim on behalf of another inmate. *See, e.g.*, *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("*pro se*" means to appear for one's self; thus, one person may not appear on another person's behalf in the other's cause). Therefore, Plaintiff's claim on behalf of inmate Snow will be dismissed for failure to state a claim.

### 8. Transfer

In his prayer for relief, Plaintiff seeks to "have me removed from this jail to another Class D jail or prison." Since filing the complaint, Plaintiff has been transferred. Therefore, his claim seeking a transfer will be dismissed as moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

### 9. Defendants against whom no factual allegations were made

Plaintiff names as Defendants Johnson, Earl, Strode, Robinson, Jamie, Stafford, Keith, Sandra, and Spillman, but he makes no factual allegations concerning the personal involvement of these Defendants in the events giving rise to the complaint. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the Court is aware of its duty to construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the Federal Rules of Civil Procedure by providing Defendants with "fair notice of the basis for his claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). To state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains. *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976). While Plaintiff states, "All these people here at one point thrown me in the hole for no apparent reason they together have also seen that each other was wrong when I

showed them their wrong[,]" the allegation does not contain the requisite specificity to provide these Defendants fair notice of the basis of his claims. Moreover, liability must be based on "active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee*, 199 F.3d at 300 (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Because Plaintiff has not alleged any facts involving the personal involvement of these Defendants, the individual-capacity claims against them will be dismissed for failure to state a claim upon which relief may be granted.

Moreover, to the extent Plaintiff seeks to hold Defendant Strode, the WCRJ Jailer, liable based on his supervisory authority, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). As the complaint contains no facts concerning Defendant Strode, it fails to demonstrate that he encouraged any specific incidents or implicitly authorized, approved, or knowingly acquiesced to any unconstitutional conduct. Accordingly, the individual-capacity claims against Defendant Strode must be dismissed for failure to state a claim upon which relief may be granted.

10. **Retaliation**

Plaintiff alleges that Defendant Causey put him in the hole in retaliation for the "shoe

incident." The Court construes the allegations as alleging that Defendant Causey put Plaintiff in the hole for filing a lawsuit concerning the loss of his shoes. Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

Upon review, <u>the Court will allow Plaintiff's retaliation claim based upon his allegation that Defendant Causey put him in the hole for filing suit regarding the loss of shoes to go forward</u>. Upon allowing this claim to proceed, the Court passes no judgment on its ultimate merit.

Plaintiff seems to allege that others of the alleged actions were taken against him in retaliation for filing suit regarding his shoes. To the extent that Plaintiff is alleging that any Defendant retaliated against him by taking any other action against him, the Court concludes that Plaintiff has not alleged any other action taken against him that is sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct. *See Thaddeus-X*, 175 F.3d at 394.

### IV.

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiff's official-capacity claims against all Defendants and his individual-capacity claims against all Defendants, with the exception of Defendant Causey for his claim that she retaliated against him by placing him in the hole for filing suit regarding the

loss of his shoes, are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Clerk of Court is **DIRECTED to terminate** all Defendants with the exception of Defendant Causey as parties to this action.

The Court will enter a separate Scheduling Order governing the claim that has been permitted to proceed.

Date: June 26, 2014

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
Defendant Causey
Warren County Attorney
4414.010