**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN**

**KEENAN ELLIOTT**                                                               **PLAINTIFF**

**v.**                                  **CIVIL ACTION NO. 1:13CV-P162-GNS**

**MISSY CAUSEY**                                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion for summary judgment (DN 47) filed by Defendant Missy Causey, by counsel. Plaintiff Keenan Elliott, *pro se*, filed a response (DN 53); Defendants filed a reply (DN 54); and Plaintiff filed a sur-reply (DN 55).[1] For the reasons that follow, the Court will grant Defendant's motion for summary judgment.

**I. SUMMARY OF CLAIM**

On initial review of Plaintiff's 42 U.S.C. § 1983 complaint pursuant to 28 U.S.C. § 1915A, the Court allowed one claim to proceed. It liberally construed Plaintiff's allegations pertaining to his detention at the Warren County Regional Jail (WCRJ) as asserting a retaliation claim that Defendant Causey, a major at the WCRJ, put Plaintiff in "the hole" for filing a lawsuit concerning the loss of his shoes.

The allegations by Plaintiff in his verified complaint that pertain to the retaliation claim are not a model of clarity. According to Plaintiff, "Missy Causey [] She's always the Head of all this, Chief Deputy. my $185.00 shoes were tore up on shake down search by Lt. Time and Co Heather Miller The Shoe incindent is already a Federal Case." Plaintiff further alleged as follows:

---

[1] In the heading of this document (DN 55-3), Plaintiff indicates that he is "objecting to the reply brief motion for summary judgment." The Court interprets this document to be Plaintiff's sur-reply.

> I on 5-28-13 about was put in the Medical Dept for refusing to take meds from Nurse Barbara. I took them anyway because I had already signed a refusal the day before because I didnt know what it was, Ms. Barbra demanded me to take it she didnt know what it was. We know if you dont take it your going to the Hole. So I took it the next time next day I didnt she told me if you dont sign the refusal paper Co. Mike will later on Mike said he didnt sign. Then on 6-1- Head nurse said Co. Mike did. anyways I was put in medical at this point with Aids and TB there on count time. Co Gary Hood came in I asked to be taken out He took me out He said I dont have a valid reason to take you out. With him laughing he said Elliott if you cuss me I can put your in the single cell I playing laughing with him said go to Hell we both laughed 10 mins later Missy Causey called Hood to bring me up front to booking Missy said you refused Housing so your going to the hole. I told her Gary Hood didnt tell you what he told me to do (cuss him) she said no she said Ill take care of him. She still put me in the Hole. then next day put me back in medical my meds ran out so I was put in there for not taking meds but then only given 2 pills for 4 days. this anger from Missy comes from my shoe incindent as well as when the Dept. of Corrections Lady visited on 5-29-13 Thur. 2013 . . . The DOC Lady, I asked her name she said I didnt need to know, then Missy stood there I said to DOC lady after she said yall have any problems. I said I have some but I know missy is gonna put me in the hole. Missy said no Im not. 2 days later in the hole. at booking when I was put in the hole she said Im not doing it because of the DOC lady. She said after I told her that HIV TV. And old men of 75 plus 6 of us there. Im having to clean up behind them plus their wining and crying at night. Missy said like you don't wine and cry. Lock him up Hood.

## II. SUMMARY-JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). "The pivotal question is whether the party bearing the burden of

2

proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Id.* The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

### III. ARGUMENTS AND ANALYSIS

In her motion for summary judgment (DN 47), Defendant Causey reports that the lawsuit that pertains to the loss of Plaintiff's shoes during an incident on January 8, 2013, is *Elliott v. Causey et al.*, 1:13CV-106-JHM (*Elliott 1*). She states that *Elliott 1*, filed on July 2, 2013,[2] is the lawsuit that Plaintiff alleges she retaliated against him for filing. By affidavit (DN 47, Ex. B), Defendant Causey avers that she was unaware of *Elliott 1* until she was served with a copy of the complaint on November 19, 2013, and that she was unaware that Plaintiff filed or planned to file a lawsuit regarding the destruction of his shoes while he was in the custody of WCRJ. Plaintiff has not been in the custody of WCRJ since September 4, 2013, when he was transferred to a different facility (DN 47, Ex. C).

---

[2] Defendant actually alleges that *Elliott 1* was filed on July 11, 2013. Under the "prison mailbox rule," however, "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Because Plaintiff dated his initiating complaint in *Elliott 1* on July 2, 2013, the Court will use this date as the filing date.

3

Defendant Causey avers that, to her knowledge and belief, every occasion Plaintiff was placed in isolation was for disciplinary reasons and that he was never placed in isolation as a result of filing the lawsuit related to his shoes being destroyed (DN 47, Ex. B). She further avers that during Plaintiff's incarceration he was placed in isolation on five occasions and that she was neither involved in nor responsible for placing him in isolation on any of those five occasions. *Id.* To the motion for summary judgment, Defendant Causey attaches the WCRJ "Inmate/ Tracking Movements" document for Plaintiff during his incarceration at the jail, which shows the five times he was placed in isolation – October 25, 2012; November 11, 2012; January 23, 2013; March 28, 2013; and May 31, 2013 (DN 47, Ex. C). She also attaches the five WCRJ incident reports, each of which indicates that all actions were taken for the "safety and security" of the jail, staff and inmates. Review of each of the incident reports reveals that Defendant Causey signed each of the forms in the space preprinted for "CHIEF DEPUTY" and that Defendant Causey was present during the March 28, 2013, incident involving a shouting match between Plaintiff and another inmate arising out of racial comments being made by the other inmate.

Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.* "Although the elements of a First Amendment retaliation claim [are] constant, the underlying concepts that they signify will vary with the setting—whether activity is protected or an action is

4

adverse will depend on context." *Bell v. Johnson*, 308 F.3d 594, 602-03 (6th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 388) (internal quotation marks omitted).

The adverse action necessary to state a constitutional violation must be such that it would "'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). This standard is an objective inquiry which is flexible enough to accommodate the various circumstances in which retaliation claims arise, and capable of screening the most trivial of actions. *Thaddeus-X*, 175 F.3d at 398. "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).

"Finally, the third element-a causal connection between the protected conduct and the adverse action-needs to be established by the plaintiffs to complete their affirmative case." *Thaddeus-X*, 175 F.3d at 399. "Here the subjective motivation of the defendants is at issue." *Id.* "If the prisoner is able to prove that his exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct, the burden shifts to the defendant to show that the same action would have been taken even absent the protected conduct." *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 399).

Defendant Causey does not dispute that Plaintiff met the first element of a retaliation claim in that he was engaged in constitutionally protected activity when he filed *Elliott 1*. See *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (recognizing that "protected conduct, for the

5

purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights claims"). She does dispute, however, that Plaintiff has met the remaining elements.

While placement in isolation would be an adverse action, *see Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) ("[R]estricting a prisoner's housing by placing him in administrative segregation constitutes an adverse action."), Defendant Causey argues that that there is no causal connection between Plaintiff's filing of *Elliott 1* and his placement in isolation because the five instances when Plaintiff was placed in isolation occurred *prior to* July 2, 2013, the date on which *Elliott 1* was filed. Further, Defendant avers that she was not aware of *Elliott 1* until served with the complaint on November 19, 2013. Thus, argues Defendant, even if she were responsible for putting Plaintiff in isolation, she could not have been motivated to do so by Plaintiff's filing of *Elliott 1* because she was not aware of the lawsuit until well after he was no longer incarcerated at WCRJ.

The Court finds that Defendant has shown by her sworn affidavit and other filings that she did not take adverse action against Plaintiff for his filing of *Elliott 1* because Plaintiff was never placed in isolation after the filing of *Elliott 1* and because Defendant was unaware of *Elliott 1* until being served with the complaint in November 2013. Defendant Causey has, therefore, met her burden of demonstrating the absence of a genuine issue of material fact as to the retaliation claim. Plaintiff must now produce sufficient evidence to create a genuine issue of material fact on the question of whether Defendant Causey placed him in the hole in retaliation for him filing *Elliott 1*.

In Plaintiff's unverified response (DN 53) to the motion for summary judgment, he does not address the merits of the retaliation claim. Instead, he seeks to compel responses to interrogatories and to add parties back into this action, relief which he previously requested (DN 51) and was denied (DN 52). Plaintiff does have one section pertaining to "Missey Placing me in the Hole." He states, "Lets Pass by some of that, Lets really show all else her staff has done by answering my questions, and adding Parties back to the claim." Clearly, nothing in Plaintiff's response demonstrates retaliation.

In Plaintiff's unverified sur-reply (DN 55), much of his discussion concerns the actual loss of his shoes (the subject of *Elliott I*), and not his retaliation claim. He even asks "the Courts to not Let Mrs. Causey Edmonds Cooper off the hook. She should be held liable for, Wrongdoing, criminal Mischief 1st, Conspiracy, tampering with Physical evidence. and Delieberate Indifference"; he does not list retaliation.

Nevertheless, Plaintiff does attempt to show that Defendant Causey knew about his intent to file a lawsuit earlier than she avers. He states:

> Mrs. Causey echoed through out my stay she have never lost a case yet. She told me to get a attorney to subponea her, so in her Reply brief in support you'll see her counsel saying once again Mrs Causey didn't know i was gonna file a suit against her.[3] She 1st knew

---

[3] To his sur-reply, Plaintiff also attaches a March 1, 2015, letter that he sent to Mark Bohleber, Jail Services Specialist for the Kentucky Department of Corrections (DN 55-2, pp. 5-6). Therein, similar to the quoted allegations above, Plaintiff states as follows:

> Im writing you to also show you all this Could have been avoided if she wasn't so arrogrant and done what was right, not after I filed these claims, running up bills for me to be stuck with. Missey and her attorney also claims, that Missey didn't know I was gonna file a claim on her, She knew because she said get a attorney to Subponea me and I said I am, like I told her Co. Doug Miles when he continued to harrass me, I'll see you in Court Mr. Miles, He states poor old Kennan, Everybody always picks on Keenan.

7

> 1) When I filed a 1983 civil form against her and the Jail staff because the Jail staff opened up my out going mail going to the U.S. Federal Court house, Parts of the Complaint was taken out of the Envelope, then it was directed to my Home (<u>By the Jail</u>.) then later the envelope was taken to the U.S. Court house by my Girlfriend Lillie Mason. And Given to the Clerk, the envelope I sent was placed in another envelope by the U.S. Post Office, stamped they didn't do the destruction of the letter, it was that way when they received it <u>from the jail</u>. Then I was told By the U.S. Judge on the W.C.R.J. Phone to file a complaint that way he could send Marshalls to investigate. I also told her and Mr. LT. Doug Miles as stated on Exbt #3 9-4-13, that they would be hearing from me by federal Court.[4] disciplinary report W.C.R.J. Entered March 28-13 Signed by <u>Missey Causey</u> #1[5]

Plaintiff asserts that Defendant Causey told him "through out" his incarceration at WCRJ that she has never lost a case and to get an attorney to subpoena her. These unverified, non-specific, statements, however, fail to demonstrate that Defendant Causey knew Plaintiff was going to file a lawsuit against her and further fail to show that, even if she did know, that she had him placed in the hole in retaliation for filing or intending to file an action.

Plaintiff additionally appears to allege that he tried to file *Elliott 1*, prior to July 2, 2013, but WCRJ staff opened and tampered with it. This allegation, too, fails to demonstrate that Defendant Causey had any knowledge that Plaintiff was filing a case against her. It alleges only

---

[4] Exhibit 3 is a WCRJ "Inmate Incident/Offense Report" dated 9/4/2013, the date Plaintiff was being transferred out of WCRJ to another facility. The Report indicated that Plaintiff failed to secure his property and sit with the other inmates and that when he finally did begin to walk toward the other inmates, he "threw several pieces of paperwork across the floor." (In the margin, Plaintiff writes that the foregoing allegations are "Lies.") When Lt. Miles told Plaintiff again to secure his property and have a seat with other inmates, Plaintiff stated, "'That's fine; I will be seeing you in Federal Court' and 'why are you picking on me.'" Lt. Miles informed Plaintiff that he was not "'picking'" on him but that Plaintiff was the only inmate that did not follow directions. Plaintiff again stated, "'I will be seeing you in Federal Court.'" Because Plaintiff was being transferred, the "Report was written for informational purposes and the safety and security of the jail, staff and inmates."

[5] Exhibit 1 is a 3/28/2013 WCRJ Incident/Offense Report involving Plaintiff and another inmate, Payne, shouting at each other. Per the Report, Defendant Causey, at one point, told Plaintiff to stand by the wall, and he complied. Plaintiff reported that the argument occurred because Payne, a white inmate, called Plaintiff a "nigger." Inmate Payne alleged that he was referring to someone else, not Plaintiff, when he used that racial slur. While Payne was being removed from the cell, he violently threw a bag on the floor and was tased. Defendant Causey placed Payne in mechanical restraints. Both Plaintiff and Payne were placed in isolation "for 24 hours for their safety and the safety and security of the jail."

that unspecified "Jail Staff" opened up his outgoing mail to the federal courthouse. Moreover, review of *Elliott 1*'s docket sheet indicates that Plaintiff complained that WCRJ staff tampered with his mail being sent to the Court *after* he filed *Elliott 1* when he was trying to comply with a deficiency order from the Court in that case. *See* 1:13-cv-00106-JHM, DN 7, 8/9/2013 Resp. to Order to Show Cause.

Plaintiff's reference to two incident reports also fails to demonstrate that Defendant Causey placed in him the hole in retaliation for filing *Elliott 1*. Exhibit 3, to which he cites as containing a statement that Defendant Causey and Lt. Miles would be hearing from him in federal court, was dated 9/4/2013, on the date he left the WCRJ, and well after his last placement in isolation on May 31, 2013. He also cites to Exhibit 1, a 3/28/2013 incident report signed by Defendant Causey and involving her, but nothing in that exhibit demonstrates that she knew about his upcoming lawsuit or had him placed in the hole for intending to file a lawsuit; rather, that exhibit shows only that Plaintiff was placed in isolation following a shouting match with another inmate.

Thus, none of Plaintiff's foregoing arguments demonstrate a retaliation claim against Defendant Causey.

In his sur-reply, Plaintiff also argues that, despite Defendant Causey's assertion to the contrary, she actually was involved in his placement in the hole. He states:

> 2) Ms. Causey says that she was not involved in any of my going to the hole. So lets show she was you just viewed the last one, envolvement she signed off and has been present not just 3 times all 5 times.
> Exbt 1, 2,[6] 3, shows she signed off as Chief Deputy on the disciplinary reports, When you read them you'll also see She, Missy's name is in the complaint.

---

[6] Exhibit 2 is a 5/31/2013, Incident/Offense Report. During headcount on that date, Plaintiff told two officers (Sanders and Rich) that he had to get out of the cell. When asked why, "he said with his Bi-Polar

9

> Exbt #4[7] it shows Mrs Causey (EDMONDS) Supporting her staffs lies against me.
> Exbt #5[8] shows again Mrs Causey (EDMONDS) Supporting her Staffs Lies. So at this Point Ms. Causey (EDMONDS) Cooper, can't say she was not involved in any of me going to the hole.
> One of the main hole transactions ill never forget is Exbt #1
> When I as removed from Cell B4, the day I was called niggers continiously daily by Patrick Payne, and once Placed in the dry out cell Missey Causey came to laugh and Look in the door window, I told her it wasnt fair for me to be pulled out of this Cell, Ky Re-Entry Cell, I had been in Re Entry 4Mos. And had a few days to complete, When Major William Baker Put Patrick Payne in this cell for Protection, Favor asked by Patricks Sister to Mr. Baker, Church Members, however Missey stood there an said him calling you Niggers don't hurt you. So, I feel it do.

(DN 55-3, pp. 2-3).

None of the content in any of the WCRJ Incident/Offense Reports demonstrates that Defendant Causey knew that Plaintiff was going to file a lawsuit or that she placed him in the hole for filing or intending to file a lawsuit. Review of the Incident/Offense Reports does reveal that Defendant Causey signed each report on the preprinted space on the form for "CHIEF DEPUTY" (DN 47, Ex. D and DN 55-4, Exs. 1-5). On each of the reports, other officers signed preprinted spaces for "REPORTING DEPUTY," "WITNESS," and "SUPERVISOR." It does not necessarily follow that Defendant Causey directed Plaintiff's placement in isolation rather

---

he was going to go off on someone if he did not get out." (Plaintiff handwrites in the margins that this was a "Lie.") Plaintiff declined protective custody, was told to pack his property, and was placed in another cell during headcount. (In the margin and below the Report, Plaintiff indicates that "refusing housing" was a "Lie" and that "Hood told me to cuss him I told Missy.") A search was conducted, and no contraband was found on Plaintiff. He was then placed in isolation for refusing housing and confusing count "for the safety and security of the Jail Staff and Inmates." Exhibits 1 and 3 have been summarized in footnotes 4 & 5, *supra*.

[7] Because Exhibit 4 is an Incident/Offense Report dated 11/10/2012, before the January 8, 2013, incident involving the loss of Plaintiff's shoes even occurred, no details need to be summarized regarding that incident.

[8] Exhibit 5 is an Incident/Offense Report dated 1/23/2013, involving Plaintiff and another inmate yelling at each other. Plaintiff and the other inmate were both placed in isolation for disrupting conduct and interrupting headcount "for the safety and security of the jail, jail staff, and other inmates."

than merely signed off on the report in her capacity as Chief Deputy. In any event, in construing the documents in the light most favorable to Plaintiff, even if the incident reports did show Defendant Causey's involvement in Plaintiff's placement in the hole, Plaintiff still fails to demonstrate that he was placed in the hole for engaging in the protected conduct of filing a federal lawsuit.

Upon consideration, the Court concludes that Plaintiff has failed to provide sufficient evidence contradicting the material facts asserted by Defendant Causey as to Plaintiff's retaliation claim, and the Court will grant summary judgment to Defendant Causey.

### IV. ORDER

For the foregoing reasons, Defendant Causey is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that her motion for summary judgment (DN 47) is **GRANTED**.

Date: August 26, 2015

**Greg N. Stivers, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Counsel of Record
4416.005